IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| RAQUEL MARGARITA COCOM, | ) |
| | ) No. 2:18-cv-002247-DCN |
| Petitioner, | ) |
| | ) **ORDER** |
| vs. | ) |
| | ) |
| ANDREY TIMOFEEV and IRINA TIMOFEEV, | ) |
| | ) |
| Respondents. | ) |

This matter comes before the court on Raquel Margarita Cocom's ("Cocom") motion for attorney's fees, ECF No. 73. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Cocom previously filed a verified petition (the "Petition") under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§9001-11 against her minor child's father, Andrey Timofeev ("Timofeev"), and paternal grandmother, Irina Timofeev ("Grandmother"), as part of her efforts to have her child (the "Child") returned to her in Belize, ECF No. 1. On January 2, 2019, the court entered an order detailing the court's findings of fact and conclusions of law and ordering the immediate return of the Child to Cocom. ECF No. 63. The court incorporates by references all of those factual findings and legal conclusions, rather than reiterating them in this order.

On January 30, 2019, Cocom filed a motion for attorney's fees, requesting $62,020.00 in attorney's fees and $9,692.70 in costs. ECF No. 73. On February 19, 2019, Grandmother filed her response, ECF No. 76, and on February 20, 2019, Timofeev filed his response, ECF No. 77. On February 26, 2019, Cocom filed her reply. ECF No. 78. Per the court's instruction, the parties filed sur-replies with their answers to various questions posed by the court on October 4, 2019. ECF Nos. 79–81. The motion is now ripe for review.

## II. DISCUSSION

The Convention[1] is intended "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Maxwell v. Maxwell, 588 F.3d 245, 250 (4th Cir. 2009). The Convention seeks to preserve the status quo—the return of children to their home countries for further proceedings—when appropriate. Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001). Thus, it is not the underlying custody case at issue that is being decided under the Convention; rather, a court adjudicating a petition under the Convention must determine whether the Child should be returned home for custody proceedings. Id. at 398. To succeed on a petition for return of a child under the Convention, the petitioner must prove by a preponderance of the evidence that: (1) the Child habitually resided in the petitioner's country of residence when the Child was

---

[1] Both the United States and Belize are parties to the Hague Convention. The United States became a party when it ratified the Hague Convention in 1988. See Convention, art. 37. Belize became a party through accession. Id. art. 38. The United States accepted Belize's accession, and the Hague Convention entered into force between the two countries in 1989. See Hague Conference on Private Int'l Law, Acceptance of Accession, http://www.hcch.net/ (last visited Dec. 15, 2018).

removed; (2) the removal breached petitioner's rights of custody under the law of his or her home state; and (3) that the petitioner had been exercising his or her rights of custody at the time of removal. Miller, 240 F.3d at 398 (citing the Convention, art. 3).

ICARA also provides for attorney's fees for the petitioner if she is successful:

> [a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title <u>shall order</u> the respondent to pay necessary expenses incurred by or on behalf of the petitioner, <u>including court costs, legal fees</u>, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, <u>unless</u> the respondent establishes that such order would be <u>clearly inappropriate</u>.

22 U.S.C. § 9007(b)(3) (emphasis added). The statute therefore creates a rebuttable presumption that the successful petitioner "shall" be awarded costs and fees, putting the burden on the respondent to show the court such an award is "clearly inappropriate." If the respondent can make such a showing, "ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs." Neves v. Neves, 637 F. Supp. 2d 322, 345 (W.D.N.C. 2009).

Though this "clearly inappropriate" inquiry is necessarily dependent on the facts of each case, the following two considerations are often relied upon in determining whether to grant fees and costs under ICARA—"whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child . . . [and] whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified." Rath v. Marcoski, 898 F.3d 1306, 1311 (11th Cir. 2018). Sometimes either one of these factors is enough to preclude the award of fees and costs based on the "clearly inappropriate" standard. In these cases, the

inquiry is cut short before the court must conduct its traditional analysis in determining the reasonableness of attorney's fees.

Here, the court finds that it would be clearly inappropriate to require Timofeev and Grandmother to pay attorney's fees because a fee award with impose a significant financial hardship that would impair their ability to care for the Child. In considering whether a fee award would significantly impair the respondent's ability to care for the child, courts consider various aspects of the respondent's financial situation. See Malmgren v. Malmgren, 2019 WL 5092447, at *2 (E.D.N.C. Apr. 1, 2019) ("Given respondent's limited assets and substantial debts, it would be clearly inappropriate to compel her to pay an additional $16,681.09, and doing so would make it difficult for respondent to contribute to her minor child's care."); Mendoza v. Silva, 987 F. Supp. 2d 910, 917 (N.D. Iowa 2014) (finding a fee award to be clearly inappropriate in part because the respondent earned approximately $9 an hour and had no assets large enough to satisfy the award); Montero-Garcia v. Montero, 2013 WL 6048992, at *6 (W.D.N.C. Nov. 14, 2013) (reaffirming its decision to deny an award of fees and costs because the respondent "has no ability to pay such award, has no assets, and has no prospects for future employment"); Lyon v. Moreland-Lyon, 2012 WL 5384558, at *2 (D. Kan. Nov. 1, 2012) (finding an award of attorney's fees and costs to be clearly inappropriate because the respondent had no job, no income, no car, and no savings, and the respondent was living on loans from her family).

Timofeev argues that he would be financially ruined were he required to pay the sum that Cocom requests and that his ability to both support and visit the Child would be severely handicapped. Timofeev has a job in which he works 40 hours per week, is paid

4

$21.76 per hour, and has limited opportunity for overtime work. ECF No. 81 at 3. He lived with Grandmother at one point but now lives either in his 2004 pick-up truck or at homeless shelter in Charleston, South Carolina. Id. at 2. Timofeev obtained his pick-up truck for $500, and the expenses related to his truck include $430 in insurance for six months, $15 in taxes per year, and $60 in gas per week. Timofeev also has various monthly expenses, like food, laundry, and medical care. ECF No. 77-1 at 3. As to other assets owned by Timofeev, there has been some dispute over whether Timofeev owns property in Belize. Timofeev has a Land Certificate for the property, which he submitted to the court, but based on representations made by Cocom's lawyer in Belize, Timofeev is unsure if his title is still valid. It appears that Timofeev has been or could be charged with kidnapping in Belize, so he has not returned to Belize to verify if his title is still valid. Timofeev estimates that the land has little, if any value, and that the home is worth $5,000.00.

Grandmother argues that she is unable to pay the requested fees and costs. Grandmother is 55 years old and is living on her savings, which total $6,000.00. Her 2017 tax return indicates that she has no income, and she does not receive Social Security benefits. See ECF No. 79 at 5–9. Grandmother anticipates receiving pension from Russian Federation beginning in October 2020. She has no driver's license, no work experience, and lives in a rural community, giving her minimal, if any, prospect of employment.

Given the financial position of both Timofeev and Grandmother, the court finds that it would be clearly inappropriate to award any attorney's fees in this case. The requested attorney's fees and costs in this case are over $70,000.00, and based on the

evidence before the court, it is clear that requiring Timofeev and Grandmother to pay this amount would constitute a significant hardship that would wholly detract from their ability to support the Child. While Timofeev has a job, he only makes $45,260.80 per year, assuming he works every week of the year and not taking taxes into account.[2] The amount of fees and costs sought by Cocom is over 1.5 times that amount. Timofeev's only assets are his truck, worth $500, and possibly property in Belize, worth $5,000. The sale of these assets would put only a small dent in the total amount of fees and costs claimed by Cocom, over $70,000.00, and the sale of Timofeev's truck would presumably create a serious impact on Timofeev's ability to work and make money to support himself and the Child.[3]

Grandmother's financial position is even more dire. Her only sources of money that she could use to pay the requested fees and costs are her $6,000 in savings and any pension she will receive beginning next year. As such, it would be clearly inappropriate to award any fees or costs for which Grandmother would be responsible in part or in whole. Grandmother does not explicitly argue that paying the award would detract from her ability to support the Child, as is required for the court to find the award clearly inappropriate. However, the record in this case indicates that in the past, Grandmother has contributed to the support of the Child. See ECF No. 63 ¶ 21 (finding that

---

[2] $21.76 per hour x 40 hours per week x 52 weeks = $45,260.80.
[3] The court declines to order Timofeev to take any action with his property in Belize. The court is constrained by the principles behind the Hague Convention and the impropriety of becoming involved in a foreign property dispute. However, the court notes that it seems to be in the best interest of the Child for Timofeev to resolve the title issue and transfer the property deed to Cocom and the Child, especially if Timofeev has no plans to return to Belize.

Grandmother purchased airplane tickets for Timofeev and the Child to fly from Belize to Miami); id. ¶ 24 (finding that the Child and Timofeev lived with Grandmother). As such, the court is convinced that Grandmother has sufficiently shown that the award would be clearly inappropriate as to her.

An additional factor considered by the court is that Cocom was represented on a pro bono basis. Cocom argues that her pro bono representation is immaterial; however, courts consider this fact in determining whether an award of fees is clearly inappropriate. See Vite-Cruz v. Del Carmen Sanchez, 2019 WL 402057, at *2 (D.S.C. Jan. 31, 2019) (finding an award of fees and costs to be clearly inappropriate in part due to the petitioner's pro bono representation); Vale v. Avila, 2008 WL 5273677, at *2 (C.D. Ill. Dec. 17, 2008) (finding that while pro bono representation "does not, by itself, render an award of attorney fees clearly inappropriate, it is a factor that cuts against any such award."). As such, while Cocom's pro bono representation does not alone make an award of fees and costs clearly inappropriate, the court finds that it weighs in favor of denying the award.[4]

The court also notes that it has discretion to reduce the amount of fees and costs awarded, as opposed to outright denying the award. See Smedley v. Smedley, 2015 WL 5139286, at *3 (E.D.N.C. Sept. 1, 2015) (finding it appropriate to reduce the award amount by 75%). However, the court declines to do so here. The court is convinced by the evidence presented by Timofeev and Grandmother of their limited resources. Given

---

[4] In finding so, the court does not wish to discourage pro bono representation in these matters. Pro bono representation is an important and noble service that attorneys provide, especially cases such as this one.

7

their dire financial situations and the impact of the award on their ability to support the Child, the court finds that it would be clearly inappropriate to award fees and costs in this case.

To the extent Cocom argues that she is still entitled to an award of costs pursuant to Rule 54(d), Cocom's argument fails. "The language of Rule 54(d)(1) does not provide that the presumptive award of costs may be defeated because of the nature of the underlying litigation. On the contrary, it provides that '[e]xcept when express provision therefor is made either in a statute of the United States or in these rules,' the cost-shifting to the prevailing party otherwise applies to all cases." Cherry v. Champion Int'l Corp., 186 F.3d 442, 448 (4th Cir. 1999). "Rule 54(d) is supplanted by 42 U.S.C. § 11607(b), which provides for the shifting of fees, costs, and expenses except where 'such order would be clearly inappropriate.'" Montero-Garcia v. Montero, 2013 WL 6048992, at *5 (W.D.N.C. Nov. 14, 2013) (quoting 42 U.S.C. § 11607(b)(3)). Therefore, any reliance on Rule 54(d) is misplaced.

## III. CONCLUSION

For the foregoing reasons, the court **DENIES** the motion for attorney's fees and costs.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**November 13, 2019
Charleston, South Carolina**